# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| DANIELLE CROSS o/b/o K.C., | ) | CASE NO. 5:20-cv-2787 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the Report and Recommendation ("R&R") of Magistrate Judge Darrell A. Clay (Doc. No. 17) with respect to the complaint of plaintiff Danielle Cross ("Cross" or "plaintiff") seeking judicial review of defendant Commissioner of Social Security's ("Commissioner" or "defendant") determination with respect to an application for supplemental security income ("SSI") that was filed on behalf of the minor child K.C.[1] The Commissioner filed objections to the R&R (Doc. No. 18) and Cross filed a response to the objections (Doc. No. 19).

Cross also filed a motion to supplement the record. (Doc. No. 14.) That motion appears unopposed.

Upon *de novo* review, and for the reasons set forth below, the Court hereby overrules the Commissioner's objections, adopts the R&R, reverses the Commissioner's decision to deny the SSI application, and remands under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, including a decision as to whether consideration of any new evidence is appropriate.

---

[1] K.C. is often referred to in this record as "K.S.C." The Court will adhere to the appellation in the complaint.

I.     **PROCEDURAL BACKGROUND**

On April 9, 2018, Cross filed for SSI on K.C.'s behalf, alleging a disability onset date of July 21, 2017, K.C.'s date of birth. (Doc. No. 11, Transcript at 95.[2]) The claim was denied initially and on reconsideration. (*Id*. at 95–112, 113–26.)

Cross requested a hearing before an Administrative Law Judge ("ALJ") (*id*. at 137–39), which was conducted on February 19, 2020 (*id*. at 45–89). Cross testified at the hearing, while representing herself and K.C., who was then two years old and was not present; K.C.'s maternal grandmother, Patty Kasikowski, also testified. On April 23, 2020, the ALJ issued a written decision finding K.C. not disabled. (*Id*. at 26–44.)

The Appeals Council denied Cross' request for review (*id*. at 4–6), and further denied her request to add documents to the record (*id*. at 5), including individualized education program records from Summit Co. ESC District dated July 2020 (*see* Doc. No. 14); a treating source statement from Carrie A. Bohenick, M.D. dated May 28, 2020 (*see* Doc. No. 11 at 90–93); and records from Akron Children's Hospital dated April 17, 2020 (*see id*. at 11–25).

The Appeals Council's denial rendered the ALJ's decision of April 23, 2020 the final decision of the Commissioner. The instant action was timely filed on December 17, 2020. After briefing, the magistrate judge issued the R&R on January 14, 2022, recommending that the Commissioner's decision denying SSI be reversed and the matter be remanded for further proceedings. The R&R does not address Cross' motion to supplement the record.

---

[2] Page number references to the administrative transcript are to the bates numbers applied to the lower right-hand corner of each page. All other page number references herein are to the consecutive page numbers applied to individual documents by the electronic filing system, a citation practice recently adopted by this Court despite a different directive in the Initial Standing Order for this case.

## II. STANDARD OF REVIEW

This Court's review of the magistrate judge's R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R&R to which objection is made.

Judicial review of the Commissioner's decision, however, is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

If there is substantial evidence to support the Commissioner's decision, it must be affirmed even if the reviewing court might have resolved any issues of fact differently and even if the record could also support a decision in plaintiff's favor. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854–55 (6th Cir. 2010); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted). Put another way, "'[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

That said, since "[t]he determination of whether there is substantial evidence to support the findings of the [Commissioner] depends on the record as a whole[,]" *Hephner v. Mathews*, 574

3

F.2d 359, 362 (6th Cir. 1978), "an 'ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.'" *Lowery v. Comm'r, Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (further citation omitted)).

Stated differently, an ALJ may not "cherry-pick[] select portions of the medical record" to support his findings, but must "perform[] a proper analysis of the medical evidence under agency regulations and controlling case law[.]" *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013); *see also Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("[A]n ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'") (citations omitted). In other words, the Commissioner "may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011). Rather, the Commissioner's reasoning must "build an accurate and logical bridge between the evidence and the result." *Id.* at 877 (citation and quotation marks omitted).

### III. DISCUSSION

#### A. Disability Determination

When a claimant is under the age of 18, a three-step sequential evaluation process is used to determine disability. A minor claimant will be found disabled when the evidence establishes: (1) that the claimant is not engaging in substantial gainful work activity; (2) that the claimant has a medically determinable physical or mental impairment, or a combination of such impairments, that is "severe," meaning that it has lasted or can be expected to last for a continuous period of not

4

less than 12 months, or to result in death, and results in serious functional limitations; and (3) that the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment. If it is determined at step 1 or step 2 that the claimant is not disabled, the evaluation ends. *See* 20 C.F.R. § 416.924(a).

In determining functional equivalency, the ALJ considers how the claimant functions in six domains set forth in the regulations: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).[3] An impairment is of listing-level severity if the claimant has "marked" limitations in two of these domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

A "marked" limitation exists when an impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. It is "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i). If a claimant is under the age of 3 and there are no available standardized test scores, a "marked" limitation is found if the claimant is functioning "at a level that is more than one-half but not more than two-thirds of [the claimant's] chronological age[.]" 20 C.F.R. § 416.926a(e)(2)(ii).

An "extreme" limitation exists when an impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. It is "'more than marked.'" 20 C.F.R. § 416.926a (e)(3)(i). If a claimant is under the age of 3 and there are no

---

[3] For each domain, the ALJ considers information that will help answer the following: (1) what activities the claimant is able to perform; (2) what activities the claimant is not able to perform; (3) which of the claimant's activities are limited or restricted compared to other same-age children without impairments; (4) where the claimant has difficulty with activities — at home, in childcare, at school, or in the community; (5) whether the claimant has difficulty independently initiating, sustaining, or completing activities; and (6) what kind of, and how much, help the claimant needs to do activities, and how often that help is needed. 20 C.F.R. § 416.926a(b)(2).

available standardized test scores, an "extreme" limitation is found if the claimant is functioning "at a level that is one-half of [the claimant's] chronological age or less[.]" 20 C.F.R. § 416.926a(e)(3)(ii).

### B. The ALJ's Determination

Here, the ALJ determined that K.C. (who, at the time, was defined as an older infant/toddler) had not engaged in substantial gainful activity since the date of her SSI application and that she "has the following severe impairments: Sandifer's syndrome[4] with plagiocephaly and speech, language, and developmental delays." (Doc. No. 11 at 30.) "The record also documents the claimant to have esotropia of the left eye, recurrent ear infections, and an absence of ear cartilage bilaterally at birth . . . [which] are found to be non-severe." (*Id.*)

The ALJ further determined that K.C. did not have an impairment or combination of impairments that meets or medically equals the severity of Listing 112.14 (which addresses developmental disorders and applies to children under the age of 3), nor an impairment or combination of impairments that functionally equals the severity of the listing. (*Id.* at 30–38.) In fact, the ALJ found that K.C. had "less than a marked limitation" in all six domains.

### C. Analysis

In her brief before the magistrate judge, Cross set forth three issues: (1) whether the ALJ erroneously discounted medical opinions that K.C. has a marked limitation in the domain of "acquiring and using information"; (2) whether the ALJ erred in determining that K.C.'s limitation

---

[4] The ALJ explained that "Sandifer syndrome is a rare, pediatric manifestation of GERD [gastroesophageal reflux disease], characterized by post-prandial abnormal and dystonic movements of the head, neck, eyes, and trunk, often mistaken for seizures. It is a neurological digestive disorder . . . ." (Doc. No. 11 at 30.)

6

in the "caring for yourself" domain was less than marked; and (3) whether new and material evidence warrants remand.

### 1. *Issues 1 and 2 — Domain Challenges*

As to the first issue, the R&R identified two problems with the ALJ's evaluation of the domain of acquiring and using information. The R&R states:

> Here, the ALJ did articulate how he considered the supportability and consistency of the consultants' opinions, noting that the consultants' opinion as to the degree of limitation was inconsistent with [K.C.'s] demonstrated capacity for learning, such as learning to walk, to use markers, to play with toys, to blow kisses to her brother, and to recognize family and friends. (Tr. 38). However, pursuant to the Agency's regulations, the abilities to walk, to use markers, and to use gestures to interact with others are not relevant to the domain of acquiring and using information, but [are] relevant to other domains. . . . *See* 20 C.F.R. § 416.926a(g)(2)(i). The ALJ did not offer additional articulation about how he evaluated the State agency medical consultants' opinion, or additional explanations for finding the opinion unpersuasive.
>
> * * *
>
> I also note the ALJ mentioned that [K.C.'s] evaluators conducted standardized testing to measure development (Battelle Developmental Inventory II and the Preschool Language Scale-5) and noted one of the scores in his decision, but did not use the information appropriately to analyze [K.C.'s] limitations, as the regulations direct. *See* 20 C.F.R. § 416.926a(e)(1)(ii) ("The medical evidence may include formal testing that provides information about your development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents. Standard scores (*e.g.* percentiles) can be converted to standard deviations. When you have such scores, *we will consider them together with the information we have about your functioning* to determine whether you have a "marked" or "extreme" limitation in a domain.") (emphasis added). The ALJ noted [K.C.'s] Total Language score of 62 but did [not] mention that the score placed [K.C.] in the 1% rank compared to her same-aged peers. (Tr. 36). The ALJ noted that [K.C.] took the Battelle Developmental Inventory II twice and that her more recent scores decreased. (Tr. 36). Though the record contains both sets of scores, the ALJ did not mention or analyze them as required under the regulations.

(Doc. No. 17 at 20–22 (alteration added).)

As to the second issue—the domain of self-care—the R&R points out that "the [ALJ's] limited discussion . . . did not address record evidence of [K.C.'s] difficulty with emotional self-regulation and self-soothing, cooperating with caregivers to take care of physical needs, and independence." (*Id*. at 24–25 (alterations added) (citing *numerous* instances of record evidence not mentioned by the ALJ).) Although recognizing that "an ALJ is not required to discuss each and every piece of evidence in the record to justify his determination," (*id*. at 25 (citation omitted)), the R&R correctly noted that the ALJ "may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." (*Id*. (internal quotation marks and citations omitted).)

In his objections, the Commissioner argues (with respect to both of the challenged domains) that "the ALJ's decision highlighted specific pieces of evidence that ensured that his non-disability finding cleared the low substantial evidence bar." (Doc. No. 18 at 3–4 (citing cases and listing record evidence).) But the fact that courts have occasionally referred to the "substantial evidence" standard as a "low bar"—which is true, since the standard is quite deferential—says nothing about the requirement that the ALJ must base the final determination on the record as a whole *and* must sufficiently explain his or her reasoning so a reviewing court can conduct a *meaningful* review. Even the cases relied upon by the Commissioner for his "low bar" assertion support that principle. In *Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783 (6th Cir. Sept. 3, 2021), the court noted that "[o]n the one hand, the substantial evidence standard, while requiring 'more than a mere scintilla' of evidence, is a low bar." *Id*. at *2 (quoting *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019)) (further citation omitted). But it further noted that, on the other hand, "the existence of otherwise substantial evidence supporting the Commissioner's decision cannot excuse the failure of an ALJ to follow a mandatory

8

regulation"—in that case the treating physician opinion rule. *Id.* (internal quotation marks and citation omitted). And, notably, the court concluded that this failure to comply with regulations "without adequate justification[] . . . was not harmless [error]." *Id.*

There is a difference between "highlighting" relevant, representative evidence and ignoring evidence altogether. The R&R is correct in its critique of the ALJ's failure to *explain* his omission of any discussion of significant portions of relevant evidence with respect to both of these domains, noting that, as a result, this Court "cannot tell if that evidence was not credited or [was] simply ignored, . . . [which] preclud[es] . . . meaningful review." (Doc. No. 17 at 25 (alterations added].)

The Commissioner also asserts in his objections that any claim of "cherry picking" does not support remand "because crediting it would require a court to re-weigh record evidence." (Doc. No. 18 at 5.) But remand is the *best* remedy for cherry-picking precisely because it *avoids* any re-weighing of evidence by this Court and places that responsibility where it belongs—with the administrative agency on remand.

> Even under the substantial evidence standard of review, which gives an ALJ a significant amount of latitude to evaluate the evidence, an ALJ may not read the record so selectively that his decision lacks substantial support. As the courts have said, "'cherry picking' or disregarding favorable statements that, as a whole, demonstrate [disability] amounts to a distortion of the record." *Bradshaw v. Comm'r of Social Security*, 2013 WL 3762940, *10 (E.D. Mich. July 17, 2013). This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.

*Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016), *report and recommendation adopted by* No. 2:16-cv-172, 2017 WL 375707 (S.D. Ohio Jan. 25, 2017).

To the extent the Commissioner objects to the R&R with respect to its discussion of these two domains, the objections are overruled.

The Court, therefore, determines that the ALJ departed from the substantial evidence standard by cherry-picking the record and not properly addressing it as a whole, precluding meaningful review by this Court. Therefore, reversal of the Commissioner's decision to deny SSI benefits to K.C. is warranted. The case will be remanded to the Commissioner for further proceedings. *See* 42 U.S.C. § 405(g) (sentence four).

### 2. *New Evidence*

Cross has also submitted evidence that she attempted unsuccessfully to insert into the record during the course of the administrative appeal and subsequently inadvertently failed to attach to her brief.

First, Cross seeks consideration of a May 28, 2020 treating source statement of Dr. Carrie A. Bohenick, M.D., FAAP, K.C.'s pediatrician. This statement is actually in the administrative record (*see* Doc. No. 11 at 90–93), but the Appeals Council determined that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (*Id*. at 5.)

Dr. Bohenick identified K.C. as having "marked limitation" in both "acquiring and using information"[5] and "caring for self" as well as in "attending and completing tasks" and "health and physical well-being." (*Id*. at 90, 91, 92.) It is not clear that the outcome here would have been unchanged had the ALJ considered this treating source physician statement that originated from the same general period of time as the other medical evidence.

Cross also seeks to supplement the record with certain educational records. In July 2020, after the administrative hearing, K.C. underwent multiple evaluations through the Summit County ESC District in preparation for an Individualized Education Program ("IEP"). These documents

---

[5] This is consistent with the findings of the two State agency pediatricians (Frank Stroebel, M.D. and Robert Klinger, M.D.) that the ALJ rejected. (*See* Doc. No. 11 at 107, 122.)

10

were submitted by plaintiff as Exhibit 1[6] to her motion to supplement the record (*see* Doc. No. 14), and include individual evaluator assessments by the following professionals:

- Melissa Marino, MA, CCC-SLP (speech and language pathologist) (Doc. No. 14 at 4–7; 29–30);

- Dr. Elisabeth Goodman, Ph.D. (school psychologist) (*id*. at 8–18);

- Amanda Blue, M.Ed. (early childhood intervention specialist) (*id*. at 19–22);

- Dawn Ward, MOT, OTR/L (occupational therapist) (*id*. at 23–26); and

- Lauren Drobnjak (physical therapist) (*id*. at 27–28).

These individual assessments culminated in a Team Summary Report (*id*. at 31–37). As with the statement from Dr. Bohenick, it is not clear that the outcome here would have been unchanged had these reports been considered by the ALJ.

That said, since the Court has determined that a sentence four remand is warranted given the ALJ's departure from the substantial evidence standard as a result of his inadequate consideration of the record as a whole, there is no need to determine whether this new evidence should be admitted. Therefore, plaintiff's motion to supplement (Doc. No. 14) is denied for this reason. It will be up to the ALJ to determine on remand whether, given the typically rapidly-changing situation with a developing child, it may be appropriate to allow the record to be supplemented with this (and perhaps other) information that might otherwise have been available during the administrative review process, if the timing of its availability had only been different.

---

[6] In her brief and motion to supplement, plaintiff refers to these materials as "Exhibit 1," although the document is physically marked as "Plaintiff's Exhibit A."

## IV. CONCLUSION

For the reasons discussed above, the Commissioner's objections are overruled and the R&R is adopted. The Commissioner's decision is reversed and this case is remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, including a decision as to whether any new evidence should be considered. This case is closed.

**IT IS SO ORDERED**.

Dated: February 25, 2022

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**